IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PREFERRED CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP, LLC<br><br>Plaintiff,<br><br>v.<br><br>GEORGE PATTERSON, individually and d/b/a AFFORDABLE CONSTRUCTION,<br><br>Defendant. | Case No. 3:21-cv-00362<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE NEWBERN |

## MEMORANDUM

Pending before the Court is a Motion for Summary Judgment filed by Plaintiff Preferred Contractors Insurance Company Risk Retention Group, LLC ("PCIC"). (Doc. No. 15). Defendant filed a Response (Doc. No. 19), and Plaintiff filed a Reply (Doc. No. 21).

For the reasons stated below, Plaintiff's Motion will be GRANTED and Judgment will enter in favor of Plaintiff.

### I.   BACKGROUND

On May 9, 2019, Defendant George Patterson, a general contractor, signed an Insurance Application to renew insurance coverage with PCIC for the period May 25, 2019 to May 25, 2020. (Doc. No. 1-6). In reliance on Patterson's representation in the Insurance Application, PCIC issued Patterson a commercial general liability policy, with a policy period of May 25, 2019, to May 25, 2020 (the "Policy"). (*See* Answer, Doc. No. 8, ¶ 21 (admitting PCIC issued the Policy in reliance on the information Patterson provided in the Application)).

1

The Policy contains various exclusions and conditions precedent to coverage. As relevant here, these include an exclusion related to material misrepresentations in the application for insurance. The Policy states:

> This policy does not apply to any "claim," "occurrence," or "suit" that would not otherwise be covered by for a misrepresentation in the application for insurance by the insured. This exclusion shall apply if the concealed, undisclosed, or misrepresented information would have had an effect on the terms, conditions, exclusions, endorsements, premium, overall risk, or issuance of the policy, had it been known to the Risk Retention Group at the time the insured initially applied for or renewed this policy.

(Doc. No. 1-3 at PageID# 60).

In the Application, Patterson represented that he was engaged solely in residential remodeling and did not do any commercial work. (Doc. No. 1-6). He specifically stated that he would not perform any work on commercial buildings over 20,000 square feet. (*Id.*). With regard to the volume of work, Patterson stated that he had annual gross receipts of $100,000, and estimated subcontracting costs of $25,000. (*Id.*). He represented that he required subcontractors to have insurance limits equal to his own, to name him as an additional insured, to sign a standard written contract with an indemnification agreement, and that he always collected certificates of insurance. (*Id.*).

At the time Patterson signed the Insurance Application, these representations were demonstrably false. Eight months before, on September 12, 2018, Patterson entered into a Contractor Construction Agreement with FR Properties for the construction of a retail firearms store and shooting range (the "Project"). (Doc. No. 1-4). The value of the contract was $1,931,040.00. (*Id.*). In April 2019, one month before he signed the Insurance Application, Patterson entered into a subcontract with a concrete company to install the concrete pad for the Project. (Doc. No. 1-5). The subcontract is valued at over $42,000.00, and does not include any

2

Case 3:21-cv-00362  Document 22  Filed 05/31/22  Page 2 of 8 PageID #: 256

language requiring Patterson to be named as an additional insured on the concrete company's insurance policy or any indemnification provisions. (*Id*.).

On September 26, 2019, FR Properties made a demand on Patterson related to alleged negligent workmanship on the Project. (Doc. No. 1-7). On October 28, 2019, FR Properties sent notice of the demand directly to PCIC. (*Id*.). On October 26, 2020, FR Properties filed a lawsuit against Patterson and the concrete subcontractor in the Circuit Court for Rutherford County, Tennessee, alleging Patterson committed fraud/misrepresentation, breach of contract, breach of warranty, and violation of the Tennessee Consumer Protection Act. (Doc. No. 1-2). Defendant never notified PCIC of the underlying lawsuit or requested PCIC provide a defense. (Doc. No. 16-2, Interrogatory Nos. 2 and 20).

PCIC filed the instant declaratory judgment action seeking a declaration that PCIC has no duty to defend or indemnify Patterson in the underlying lawsuit and is entitled to withdraw the defense it has provided under a reservation of rights. (Doc. No. 1).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III. ANALYSIS

Plaintiff argues it is under no duty to defend or indemnify Patterson in the underlying lawsuit for a number of reasons, foremost of which is that Patterson made material misrepresentations on his Insurance Application and PCIC relied on those misrepresentations when deciding whether to issue the Policy. PCIC contends the Policy exclusion for misrepresentations in the Insurance Applications precludes coverage.

In a diversity action, the substantive law of the forum state controls under the forum's choice of law principles. *See In re Air Crash Disaster*, 86 F.3d 498, 540-41 (6th Cir. 1996) (citing *Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "In Tennessee, absent a valid choice of law provision, the rights and obligations under an insurance policy are governed by the law of the state where the insurance policy was 'made and delivered.'" *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 485 n.1 (Tenn. Ct. App. 2006). Here, the Policy does not appear to contain a choice of law provision. (*See* Doc. No. 1-3). Because the Policy was

4

issued and delivered to Patterson in Murfreesboro, Tennessee (*see id*. at PageID# 47), the Court applies Tennessee substantive law to the interpretation and effect of the Policy.

Under Tennessee law, "an insurance policy is a contract, and as such, [the court's] analysis must be grounded in principles of contract law." *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005). Thus, the terms of an insurance contract "should be given their plain and ordinary meaning." *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012). Where the language of the policy is clear and unambiguous, the court must give effect to that meaning. *Id*. Courts must construe insurance policies "as a whole in a reasonable and logical manner." *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc*., 216 S.W.3d 302, 306 (Tenn. 2007).

Here, the Policy excludes coverage when misrepresented information in the application for insurance would have had an effect on the "overall risk [] or issuance of the policy, had it been known to the Risk Retention Group at the time the insured initially applied for or renewed this policy." (Doc. No. 1-3 at PageID# 60). Under Tennessee law, misrepresentations in an application for insurance "shall [not] be deemed material or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss." Tenn. Code Ann. § 56-7-103. Accordingly, "the insurer may show either 1) that the misrepresentation was made with the intent to deceive, *or* 2) that the matter represented increased the risk of loss." *State Farm Gen. Ins. Co. v. Wood*, 1 S.W.3d 658, 661 (Tenn. Ct. App. 1999) (citations omitted).

"Whether a misrepresentation increases the risk of loss within the meaning of the statute is a question of law." *Sine v. Tenn. Farmers Mut. Ins. Co*., 861 S.W.2d 838, 839 (Tenn. Ct. App. 1993). "A misrepresentation increases the risk of loss when it is of such importance that it 'naturally and reasonably influences the judgment of the insurer in making the contract.'" *Id*.

5

(quoting *Seaton v. Nat. Garage Mut. Ins. Co*., 732 S.W.2d 288, 288-89 (Tenn. Ct. App. 1987)). The Court may look to questions the insurer asked on the insurance application as well as the testimony of insurance company representatives to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss and how truthful answers to the questions would have affected the premium or the company's decision to issue the policy. *Yarnell v. Transamerica Life Co*., 694 F. Supp.2d 857, 869 (E.D. Tenn. 2010) (citing *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 590 (Tenn. Ct. App. 2006)). "A finding that the insurer would not have issued the policy had the truth been disclosed is unnecessary; a showing that the insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss." *Id*. (quoting *Smith*, 210 S.W.3d at 590).

The Court finds no genuine issue of material fact exists as to whether Patterson made material misrepresentations in his application for insurance or whether these misrepresentations increased PCIC's risk of loss. Patterson represented on his application that: (1) he was not working on commercial buildings exceeding 20,000 square feet; (2) all of his work was residential; (3) the amount of his gross receipts was $100,000 per year; and (4) he always engaged in certain practices with respect to subcontractor insurance and indemnification. Dan Mattioni, Vice President of the general agent that handles sales and underwriting of PCIC's policies, testified that these misrepresentations materially affected the company's assessment of insurability and risk of loss. (Mattioni Decl., Doc. No. 16-4). Mattioni stated that being provided information that Patterson was under contract with FR Properties for a commercial project with a contract price of almost $2 million would have been material to the decision to issue the insurance policy due to the increased risk of loss. (*Id*.). He added that information that Patterson does not, in fact, abide by

6

specified practices regarding subcontractors' insurance would have also increased the risk of loss and, therefore been material to the decision to issue the insurance policy. (*Id.*).

Defendant does not deny that the Insurance Application contained incorrect information. (Doc. Nos. 19, 19-1). Nor does he provide any evidence to suggest the misrepresentations in the Insurance Application were not relevant to the risk of loss. Instead, Defendant argues PCIC should be estopped from relying on the information in the Insurance Application because such reliance was not reasonable under the circumstances. (Doc. No. 19 at 3). He argues, "[h]ad the Plaintiff's underwriters taken the time to compare the contract that [the insurance agent] prepared to prior ones, they would noticed [sic] the contract was signed electronically and that it was identical to prior year's applications. This would lead a reasonable person to more scrutiny that [sic] simply relying on the bare four corners of the contract." (*Id.*).

Defendant cites no authority for the proposition that it was unreasonable for PCIC to rely on the information in the Insurance Application because it was signed electronically or prepared by an insurance agent. The fact that the Insurance Application was prepared by an agent does not excuse Defendant from knowledge of the contents of the document. Defendant does not deny that he signed the Insurance Application, and having signed the document, he is presumed to know its contents. *Wofford v. M.J. Edwards & Sons Funeral Home, Inc.*, 490 S.W.3d 800, 810 (Tenn. Ct. App. 2015). "To permit a party, when sued on a written contract, to admit that he signed it but to deny that is expressed the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." *Beasley v. Metropolitan Life Ins. Co.*, 229 S.W.2d 146, 148 (Tenn. 1950).

Defendant's contention that the "new technology" allowing documents to be signed electronically somehow "creates a new dynamic" that obligates the insurance company to view

7

electronically signed documents with increased scrutiny is similarly misplaced. The practice of signing documents electronically may be a relatively recent development, but it has been around long enough that the binding nature of electronic signatures is well established and governed by statute. Tennessee law does not allow a party to deny the legal effect of a document solely because it is in electronic form. *See* Tenn. Code Ann. § 47-10-107 (codifying the Uniform Electronic Transactions Act ("UETA")). "The UETA, recognizing that all sorts of transactions are now routinely conducted by electronic means on a daily basis, obviates the need for a handwritten signature." *Waddle v. Elrod*, 367 S.W.3d 217, 229 (Tenn. 2012).

The Court finds there are no material issues of fact calling into doubt that Patterson made material misrepresentations in his application for insurance and that these misrepresentations increased PCIC's risk of loss. Accordingly, the Policy exclusion for material misrepresentation precludes coverage and PCIC owes no contractual duty to Patterson under the Policy. Therefore, PCIC has no duty to provide a defense or to indemnify Patterson related to the underlying lawsuit and has a right to withdraw the defense it has heretofore provided.

PCIC has raised several additional grounds for preclusion of coverage to Patterson. The Court need not address these additional grounds because the Defendant's material misrepresentation in the Insurance Application is dispositive of the coverage issue.

### IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment (Doc. No. 15) will be **GRANTED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE